[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury.
Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Janet Mifsud, were married at Rockville Centre, New York on July 2, 1982. One of the parties has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date that the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage. David Day Otis born September 26, 1984, and Jessica Spencer Otis born February 24, 1987. No other minor children have been born to the defendant wife since the date of marriage of the parties. Neither party has received state assistance. CT Page 1051
The parties are in dispute as to the cause of the breakdown of the marriage. The court finds the following additional facts regarding this issue. The plaintiff vacated the marital residence in August of 1994. He moved in with another woman in approximately July, 1995, and continues to live with her. The woman in question is the plaintiff's high school sweetheart. She contacted him in October of 1993, to meet for lunch. They met for lunch shortly thereafter and the plaintiff continued to be in constant contact with her following that initial luncheon meeting. Approximately three months before she contacted him, the plaintiff and the defendant had celebrated their anniversary and their marriage was on solid grounds. In April of 1994, the plaintiff told the defendant that he thought he was in love with this other woman again. He stated that he was obsessed and enamored with her. In September of 1994, approximately one month after he vacated the family residence, the plaintiff informed the defendant that he wanted a divorce. He informed the defendant that he was in love with this other woman.
After the plaintiff vacated the family residence, the defendant asked him to go to marriage counseling with her. The plaintiff continued to see his girlfriend, even while he was in marriage counseling. The counseling that the plaintiff attended after vacating the family home was for himself only. From the evidence presented, the court finds that the sole cause of the breakdown of the marriage is the plaintiff's involvement with another woman.
The plaintiff obtained his Ph.D. as a psychologist in 1984. The plaintiff holds two positions. He is employed at Kirby Forensic Psychiatric Center at Wards Island, New York as Director — Program Evaluation. He also holds a part-time position at the John Jay College Criminal Justice, teaching one course. He had previously taught two courses. The last time he taught two courses was in September of 1996. The second course has not been offered to him since that date. The plaintiff is in good health. The plaintiff was born on July 11, 1954.
The parties are in dispute as to the combined gross weekly income of the plaintiff from his full-time position at Kirby, and his part-time teaching position. From all the evidence presented, the court finds that his gross weekly income from both positions is $1346 and his net weekly income is $976.
When the plaintiff vacated the family home in August of 1994, CT Page 1052 he withdrew $5000 and left cash, bonds and mutual funds with a value of $21,000. Of the $21,000, $6000 was in mutual funds and $2500 was in bonds. The plaintiff receives a longevity bonus as part of his pay. He will receive a gross longevity annual bonus of $2500 in February of 1998. He does not pay any rent. His weekly food bill of $125 is for himself only. He has an auto loan through First USA. The weekly payment on that loan is $62. He shows an allowance for children of $5. That is an amount he sets aside to buy bonds. The actual amount is $18.73 weekly. He shows a deduction on his gross weekly income for those bonds and then has a duplicate deduction under weekly expenses under the category of "Insurance/Medical." Under liabilities he shows the mortgage payment and the balance due on the mortgage, and then shows it a second time by reducing the equity in the family home by the amount of the mortgage. He has shown the same duplicate deduction regarding the auto loan. His financial affidavit shows life insurance. The amount of life insurance he has is $159,000. He shows a value of household furniture as $20,000. That includes items that the defendant has agreed that the plaintiff can retain. A prior financial affidavit dated January 25, 1997, shows a fair market value of $12,000 of items that the plaintiff and defendant had agreed that the plaintiff could retain. The plaintiff owns a 1991 Toyota with an estimated value of $8000, a loan balance of $9684, and a negative equity of $1684. The plaintiff has two life insurance policies: one in the face amount of $700,000 with a cash surrender value of $11,034.87; and the second in the face amount of $70,000 with no cash surrender value. The approximate value of the coin and stamp collection owned by the parties is $3000.
The cash balance due in the plaintiff's pension plan as of April 1, 1996, was $28,167.83. The balance in the account as of April 1, 1997, was $31,338.52. He is able to receive an annual pension income at age sixty-two and thirty-five years of service of $38,731. At age sixty-seven at forty years of service he would receive $43,034. At age seventy-two and forty-five years of service he would receive $47,138. He has been employed at his principle place of employment for seventeen years. He became vested in his pension plan after ten years. From the evidence presented, the court finds that the following table shows the present value of benefits payable to the plaintiff:
 Payment Annual Commencement Benefit Present Age Payment Value CT Page 1053 ___________ ____________ ________ 55 $12,144.75 $ 78,761 56-3/4 $19,693.13 $111,571 62 $19,693.13 $ 71,528
In Krafick v. Krafick, 234 Conn. 783, 802-03 (1995), the court described various methods for valuing and distributing pensions. In this case, the court has decided to use the "present division" method. Under the present division method, the court determines, at the time of trial, the percentage share of the pension benefits to which the nonemployee spouse is entitled and declares that, upon maturity, a fixed percentage of the pension be distributed to each spouse. The plaintiff's pension plan does permit a division or assignment of pension benefits. The plaintiff could terminate his employment today and still receive his pension benefits at age fifty-five or higher. His plan does allow for a joint and survivorship benefit. The amount that will be paid if that option were elected would be less than what is shown in the above table.
The defendant is not vested in her pension plan. She has approximately $3236 in that plan which she will have the right to receive in the event her employment were to terminate.
The court finds that the fair market value of the family home is $242,000. It has a mortgage balance of approximately $133,00. In determining the distribution of the family home, the court has also considered the fact that the plaintiff has a much greater opportunity than the defendant for the future acquisition of capital, assets and income.
The parties purchased a one-week time-share for approximately $9000. Its present fair market value is approximately $1500. The defendant's financial affidavit shows a liability to Deer Run. That relates to the time-share. The decision to purchase the time-share was jointly made by the plaintiff and the defendant.
The defendant has a master's degree in special education that she obtained after the parties married. The defendant is in good health. When the plaintiff vacated the family home in August of 1994, the defendant was employed as a nursery school teacher earning approximately $17,000 per year. In September of 1995, she obtained her present employment with her annual salary starting at $33,000 a year. It was increased to $39,000 a year in 1996. Her present annual gross salary is almost $45,000. The defendant CT Page 1054 presently receives $700 for working part-time in the summer three hours per day and three days per week for five weeks. It would cost approximately $1000 per child to enroll each child full time in summer camp. The defendant's future annually salary increases will be in the range of one to two percent. She will also be eligible for an additional salary increase in four to five years when she obtains sixty additional college credits. She is presently taking courses for those college credits. She presently has seven of the sixty required credits. It costs her $420 for a three credit course. She is presently taking a one credit course.
The plaintiff left the defendant with approximately $21,000 when he vacated the marital residence. The mutual funds that were left with the defendant are still in existence and are shown under the defendant's financial affidavit under the category of American Century with a value of $5325. The defendant cashed in a $2000 New York City bond that she used to purchase a computer for the children after the plaintiff removed the computer when he vacated the family home. The defendant, on her financial affidavit dated January 13, 1998, shows weekly household expense of $19.23. The court finds that that amount is approximately $200 annually. She also shows automobile repairs in the amount of $20 weekly. The court finds that that amount is approximately $600 annually. She shows weekly expense of $38.46 for vacations. She has spent less than that amount during the past year. She shows weekly gifts of $50. That amount is approximately correct. She also owes her expert witness $750. She owes counsel fees of $6750 through November 14, 1997. She has already paid counsel fees of approximately $9000. Of the $9000 paid to date, $4500 came from savings and the balance was put on her Fleet credit card.
The defendant owns a 1991 Dodge Colt with a value of $3000. She has a Fleet Bank checking account with a balance of $1900 and a Fleet Bank mortgage account with a balance of $2200.
The defendant has gross weekly income of $863.46 and net weekly income of $671.09.
The plaintiff claims that under the support guidelines that the amount that he should be paying for support is $184 per week. The court finds that the plaintiff's guideline calculation is not correct. The correct guideline calculation calls for the plaintiff to pay support to the defendant in the amount of $270 per week.
The parties' minor son is presently in seventh grade in CT Page 1055 parochial school. The parties both initially agreed that he would attend parochial school. The plaintiff now objects to the child attending parochial school. The plaintiff has not paid for any of the parochial school costs since the parties separated. The cost of parochial school is $3000 total for both children. Parochial school only goes to eighth grade. He has been attending parochial school since kindergarten. The daughter is in fifth grade in parochial school and has also been there since kindergarten. The defendant paid the full tuition costs of both children for the calendar years 1996-1997 and 1997-1998.
The defendant seeks alimony for a ten year period. The plaintiff seeks to pay alimony for a one year period. The court finds that the youngest child will graduate high school in approximately seven and one-half years in June of 2005. The defendant's need for alimony will be substantially reduced at that time.
The plaintiff has paid his attorney $8000 in counsel fees as of November 1, 1997. The $8000 that he has paid in counsel fees does not include trial time.
The court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a
regarding the issues of joint custody, custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorneys fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay the defendant alimony in the sum of $65 per week. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) June CT Page 1056
2. The provisions of § 46b-86 (a) and 46b-86(b) are applicable.
3. The plaintiff shall maintain $20,000 unencumbered life insurance on his life naming the defendant as beneficiary. The plaintiff shall furnish to the defendant upon her request, but no more than once annually on the first business day in January, proof that he is insured in the specified amount and that the beneficiary is as required herein.
4. The plaintiff has the right to reduce the amount of life insurance by $3000 annually commencing January 1, 1999, and annually thereafter.
C. BY WAY OF CUSTODY AND VISITATION
1. The parties shall have joint custody of the minor children and the minor children shall primarily reside with the defendant.
2. The parties will consult with each other and shall, on a joint basis, make all significant decisions affecting the care and upbringing of the children including but not limited to significant decisions regarding their respective education and nonemergency medical, dental and psychological and psychiatric care. All decisions regarding the children shall be made on the basis of his or her best interests, and not with a view to the personal wishes of the parties.
3. All day-to-day decisions relating to the children's upbringing shall be at the discretion of the defendant.
4. The plaintiff shall have reasonable, liberal and flexible contact with the minor children as follows: (a) alternate weekends from Friday at 6 p. m. until Sunday at 6 p. m. when the next day is a school day and at 8 p. m. when the next day is a nonschool day; (b) the holidays of Presidents' Day, Memorial Day, July 4, Labor Day and Columbus Day will attach to the weekend of the parent that has the children for that weekend; (c) Mother's Day shall always be with the defendant, the commencement being on Saturday evening; (d) Father's Day shall always be with the plaintiff, the commencement being on Saturday evening; (e) the first portion of the Easter holiday from Wednesday at 6 p. m. until Friday at 6 p. m. shall be with the plaintiff and the second portion of the Easter holiday from 6 p. m. through Easter Sunday CT Page 1057 evening shall be with the defendant; (f) each Thanksgiving from Wednesday when school recesses through Sunday evening will be with the plaintiff; (g) from the school recess prior to Christmas until December 25, at 1 p. m. shall be with the defendant; (h) from December 25, at 1 p. m. through December 29, at 1 p. m. shall be with the plaintiff; (i) from December 29, at 1 p. m. until school reopens in the next year shall be with the defendant (j) each party shall be entitled to two weeks' vacation time with the children during the summer months. One of the plaintiff's designated weeks will be the third full week in August. One of the Defendant's vacation weeks will be the fourth full week of August. Arrangements for the second week that each parent is entitled to for summer vacation will be made at least sixty days in advance and will attempt to accommodate the children's previously scheduled summer plans.
D. BY WAY OF SUPPORT
1. The plaintiff is ordered to pay to the defendant support in the amount of $270 weekly.
2. The plaintiff shall provide medical insurance for the minor children which he has through his place of employment. In the event the plaintiff does not have medical insurance available to him and the defendant has medical insurance for the minor children available to her through her employment then she shall name the minor children as insured. Any premiums charged to the plaintiff for the cost of such medical insurance which would be applicable to the children shall be his sole responsibility. Any deductible which exceeds $500 which shall be applicable to the children shall be the plaintiff's sole responsibility. All other unreimbursed medical, dental (including orthodontia), psychiatric/psychological, prescriptive, and optical expenses incurred on behalf of the minor children, including the first $500 in deductible expenses shall be equally divided between the parties.
3. The provisions as to the maintenance of health insurance are subject to and are in accordance with § 46b-84d.
4. The plaintiff shall maintain unencumbered life insurance on his life in the amount of $50,000 naming the minor children as equal beneficiaries for so long as he has an obligation to pay support for each such child. When he no longer has an obligation to pay support for the oldest child, then the youngest child CT Page 1058 shall be the sole beneficiary of such policy. The plaintiff shall furnish to the defendant upon her request, but no more than once annually on the first business day in January, proof that he is insured in the specified amount and that the beneficiary is as required herein.
5. The plaintiff has the right to reduce the life insurance by $5000 annually commencing January 1, 1999, and annually thereafter.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to quitclaim to the defendant all of his interest in the family home located at 69 Darmonth Street, Rockville Centre, New York by thirty days after the date this decision is filed. The deed is to be delivered to the office of counsel for the defendant.
2. Simultaneously with receiving the quitclaim deed from the plaintiff, the defendant is to execute a promissory note and mortgage deed in favor of the plaintiff in the face amount of $25,000. The promissory note is due and payable without interest on the earliest of the following events: (1) the sale of the property; (2) the property is no longer the defendant's principle residence; (3) the death of the defendant; (4) June 1, 2005. The defendant is to make the mortgage payments as well as real estate taxes and homeowners insurance, and keep them current until she has paid to the plaintiff the $25,000 that is due and payable without interest on June 1, 2005.
3. The court awards to the defendant 30 percent of the pension benefit to which the plaintiff is entitled from his employment at Kirby Forensic Psychiatric Center, as of the date he retires. The court is aware of the fact that this division is not to be through a QDRO, as his pension is not covered by ERISA. An equivalent domestic relations order is to be prepared by counsel for the defendant. The court retains jurisdiction over any dispute that may arise involving the language of that order.
4. The defendant is to retain all of the household furnishings and furniture, and other items in her possession except for the following, which the plaintiff shall have the right to obtain within thirty days from the date this decision is filed: (1) Otis family silver; (2) antique humidor; (3) music box and records (most of the records and CDs are already in the CT Page 1059 possession of the plaintiff); (4) antique rocking chair and antique highchair; (5) coin, stamp and button collections; (6) cherry drop leaf table; (7) marble dresser; and (8) David Day portrait. The gold nugget that is in dispute is awarded to the defendant.
5. All the personal property and furnishings, and other items in the possession of the plaintiff are awarded to the plaintiff.
6. The 1991 Toyota shown on the plaintiff's financial affidavit is awarded to the plaintiff. He is to pay the loan balance and hold the defendant harmless therefrom.
7. The cash surrender value of $11,034.87 in the plaintiff's life insurance policy is awarded to the plaintiff.
8. The time share owned by the parties is awarded to the plaintiff.
9. The 1991 Dodge Colt shown on the defendant's financial affidavit is awarded to the defendant.
10. The Fleet Bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
11. The American Century Mutual Fund shown on the defendant's financial affidavit is ordered divided equally between the parties. That division is to be completed within thirty days from the date this decision is filed.
12. The deferred compensation plan that the defendant has through New York State Teacher's Retirement with a value of $3,236.22 is awarded to the defendant.
13. The plaintiff is to pay all of the liabilities shown on his financial affidavit except for the New York mortgage liability and he is to hold the defendant harmless therefrom.
14. The defendant is to pay all of the liabilities shown on her financial affidavit and hold the plaintiff harmless therefrom, except for the Deer Run liability. The plaintiff is to pay the Deer Run liability and hold the defendant harmless therefrom.
15. The plaintiff created a game known as "Noah's Quest." It CT Page 1060 is not copyrighted and it is not known if it is marketable. All of the right, title and interest in that game are assigned to the plaintiff.
F. BY WAY OF ATTORNEYS FEES
1. No attorneys fees are awarded in favor of either party.
G. PENDENTE LITE ORDERS
1. All pendente lite orders remain in effect until the date this decision is filed. Any arrearages are not merged into the judgment and survive the judgment. In the event that the parties are unable to agree as to the amount of any such arrearages, if any, and how they are to be repaid, then they will have to file a short calendar motion for that purpose.
H. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and forward to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt or registered mail, return receipt within fifteen days after such returns have been filed for so long as there is an outstanding alimony and/or support order or any outstanding arrearage from any such orders.
3. The defendant shall be entitled to claim the younger minor child as a dependent and the plaintiff shall be entitled to claim the elder minor child as a dependent for all tax reporting purposes. At the point in time when only one child can be claimed, the parties will alternate years with the plaintiff receiving odd numbered years and the defendant receiving even numbered years.
4. The plaintiff shall be entitled to claim the minor child only if he has paid in full his child support obligations for the tax year he is entitled to claim the minor child. Each party shall execute whatever documentation is necessary to facilitate this clause with the appropriate taxing authorities.
5. An immediate wage execution is authorized for both the CT Page 1061 support payments and the alimony payments. Those payments are to be made on a weekly basis.
Axelrod, J.